**Electronically Filed
Supreme Court
SCCQ-19-0000397
03-SEP-2021
11:32 AM
Dkt. 402 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

LIONEL LIMA, JR., et al., individually and on behalf of all
others similarly situated, Plaintiffs-Appellees,

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY, Defendant-Appellant.
(CIV. NO. 12-00509 SOM-WRP)

---

EVELYN JANE GIBO, et al., individually and on behalf of all
others similarly situated, Plaintiffs-Appellees,

vs.

U.S. BANK NATIONAL ASSOCIATION, Defendant-Appellant.
(CIV. NO. 12-00514 SOM-WRP)

---

DAVID EMORY BALD, et al., individually and on behalf of all
others similarly situated, Plaintiffs-Appellees,
vs.
WELLS FARGO BANK, N.A., Defendant-Appellant.
(CIV. NO. 13-00135 SOM-RT)

---

SCCQ-19-0000397

CERTIFIED QUESTION FROM THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAIʻI

SEPTEMBER 3, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.,
AND CIRCUIT JUDGE TONAKI, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAYAMA, J.

The United States District Court for the District of Hawaiʻi (District Court) has asked this court to determine:

> When (a) a borrower has indisputably defaulted on a mortgage for real property, (b) a lender has conducted a nonjudicial foreclosure sale but has not strictly complied with the requirements governing such sales, and (c) the borrower sues the lender over that noncompliance after the foreclosure sale and, if the property was purchased at foreclosure by the lender, after any subsequent sale to a third-party purchaser, may the borrower establish the requisite harm for liability purposes under the law of wrongful foreclosure and/or section 480-2 of Hawaiʻi Revised Statutes by demonstrating the loss of title, possession, and/or investments in the property without regard to the effect of the mortgage on those items?

> Phrased differently, the District Court asks:

> Is the effect of the mortgage considered only as a matter of setoff that a lender has the burden of proving after the borrower establishes the amount of the borrower's damages, or does a borrower with no preforeclosure rights in property except as encumbered by a mortgage bear the burden of accounting for the effect of the mortgage in establishing the element of harm in the liability case?

We hold that a borrower bears the burden of accounting for the effect of a mortgage when establishing the element of harm in the liability case for a wrongful foreclosure or unfair or deceptive acts or practices case.

2

## I.    BACKGROUND

### A.    Factual Background

This certified question arises from three putative class actions: <u>Lionel Lima, Jr., et al. v. Deutsche Bank National Trust Company</u>, Civ. No. 12-00509 SOM-WRP (D. Haw. filed Sept. 10, 2012); <u>Evelyn Jane Gibo, et al. v. U.S. Bank National Association</u>, Civ. No. 12-00514 SOM-WRP (D. Haw. filed Sept. 12, 2012); and <u>David Emory Bald, et al. v. Wells Fargo Bank, N.A.</u>, Civ. No. 13-00135 SOM-RT (D. Haw. filed Mar. 20, 2013).  This opinion collectively refers to the plaintiffs in all cases as "Plaintiff Borrowers," and the defendants in all cases as "Defendant Banks."

Each case shares roughly the same facts.  Each Plaintiff Borrower mortgaged real property to one of the Defendant Banks.  However, Plaintiff Borrowers defaulted on their mortgages.  The relevant Defendant Bank conducted nonjudicial foreclosure sales of the mortgaged properties pursuant to Hawai'i Revised Statutes (HRS) § 667-5.[1]  However,

---

[1]    HRS § 667-5 (Supp. 2008) (repealed 2012) provided in relevant part:

> <u>Foreclosure under power of sale; notice; affidavit after sale.</u>  (a) When a power of sale is contained in a mortgage, and where the mortgagee . . . desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee . . . shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.  The attorney shall:

(1)     Give notice of the mortgagee's . . . intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and

(2)     Give any notices and do all acts as are authorized or required by the power contained in the mortgage.

(b) Copies of the notice required under subsection (a) shall be:

(1)     Filed with the state director of taxation; and

(2)     Posted on the premises not less than twenty-one days before the day of sale.

(c) Upon the request of any person entitled to notice pursuant to this section and sections 667-5.5 and 667-6, the attorney [or] the mortgagee . . . shall disclose to the requestor the following information:

(1)     The amount to cure the default, together with the estimated amount of the foreclosing mortgagee's attorneys' fees and costs, and all other fees and costs estimated to be incurred by the foreclosing mortgagee related to the default prior to the auction within five business days of the request; and

(2)     The sale price of the mortgaged property once auctioned.

(d) Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee . . . .  Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee . . . shall provide the date and time of a postponed auction, or if the auction is canceled, information that the auction was cancelled.  The mortgagee within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances.

(e) The affidavit and copy of the notice shall be recorded and indexed by the registrar, in the manner provided in chapter 501 or 502, as the case may be.

4

Defendant Banks did not strictly comply with the procedural requirements of HRS § 667-5. For instance, Defendant Banks allegedly postponed some of the foreclosure auctions without publishing a notice. The properties were then either sold to third parties during the foreclosure sales or purchased by the mortgage-holding Defendant Bank and resold to third parties after the foreclosure sales.

## B.   Procedural Background

### 1.   Federal District Court Proceedings

Defendant Banks removed Plaintiff Borrowers' suits to federal court. Plaintiff Borrowers allege that Defendant Banks' nonjudicial foreclosure sales violated (1) HRS § 667-5 and (2) HRS § 480-2.[2] In particular, Plaintiff Borrowers complained that Defendant Banks

_____

> (f) This section is inapplicable if the mortgagee is foreclosing on personal property only.

[2]   HRS § 480-2 (2008) provides in relevant part:

> Unfair competition, practices, declared unlawful.
> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> . . . .
>
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
>
> . . . .

Additionally, HRS § 480-13 (2008) provides in relevant part:

a. Record[ed] and publish[ed] Notices of Sale that did not include a "description of the mortgaged property" (a) as required by HRS Section 667-7(a)(1) (2008) and (b) which was "sufficient to inform the public of the nature of the property to be offered for sale" and "calculated to interest purchasers," as required by Ulrich v. Sec. Inv. Co., 35 Haw. 158, 172-73 (1939);

b. Publish[ed] and/or post[ed] the Notice of Sale for less time than required by statute;

c. S[old] the property despite having failed to send the borrower a notice of acceleration that gave the notice that the standard form mortgage required about the unconditional right the borrower had to bring a separate suit to stop the sale[;]

d. Issu[ed] notices of sale that lacked a description of the property that would interest prospective buyers and/or comply with statute;

e. Advertis[ed] the auctions of properties by "quitclaim deed" and/or without any covenants or warranties of title whatsoever;

f. Postpon[ed] auctions so frequently that the substantial majority of sale dates advertised in the Class's published notices of sale were not the actual auction dates;

g. Postpon[ed] auctions without publishing notices of the rescheduled auctions' new dates and times;

---

Suits by persons injured; amount of recovery, injunctions. . . . .

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1)   May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit . . . ; and

(2)   May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

6

h. Chang[ed] the location of the auction without publishing the new location; and

i. Include[ed] as a term of sale that time was of the essence and that successful bidders were expected to close their sales within thirty days of their auctions, when in fact such sales either never, or almost never, closed within the specific timeframe.

In 2019, Defendant Banks moved for summary judgment on Plaintiff Borrowers' claims, asserting, <u>inter alia</u>, that Plaintiff Borrowers could not prevail because they could not prove the damages, or harm, element of either of their claims. In particular, Defendant Banks contended that Plaintiff Borrowers would not be able to show that they were harmed, or suffered any damages, because Plaintiff Borrowers did not show that (1) they could have made their loans current, (2) their properties could have sold at a higher price but for Defendant Banks' alleged actions, or (3) their properties were worth more than their remaining mortgage debts.

Plaintiff Borrowers opposed Defendant Banks' motions, responding that it was sufficient for Plaintiff Borrowers to show that they lost title, possession, and any investments in their properties to establish their damages to survive a motion for summary judgment. Plaintiff Borrowers asserted they did not need to factor in their remaining mortgage debts because the debts were only relevant as a set off Defendant Banks must prove.

7

On April 30, 2019, the District Court heard argument on Defendant Banks' motions for summary judgment. Following the hearing, the District Court asked the parties to brief the question of whether the District Court should certify a question to this court regarding the damages issue.

On May 16, 2019, the District Court issued an order certifying the above question to this court.

## 2. Supreme Court Proceedings

On June 13, 2019, this court accepted the certified question without determining whether it would answer the question. This court simultaneously ordered briefing on the certified question from the parties.

### i. Defendant Banks' Opening Briefs

Defendant Banks point out that plaintiffs seeking relief under a wrongful foreclosure or unfair or deceptive acts or practices (UDAP) claim bears the burden of proving their damages. Defendant Banks argue that Plaintiff Borrowers must prove their net damages, as opposed to gross damages, in order to establish Defendant Banks' liability. Defendant Banks base this argument on the premise that the purpose of damages for wrongful foreclosure and UDAP claims is to restore plaintiffs to the position they would have been in had they not been injured. Thus, Defendant Banks claim that Plaintiff Borrowers must factor in their remaining mortgage debts when proving their damages.

8

Defendant Banks additionally note that the remaining mortgage debts are significant, ranging from $169,000 to $945,000.

### ii. Plaintiff Borrowers' Answering Briefs

Plaintiff Borrowers do not directly address the District Court's certified question. At best, Plaintiff Borrowers suggest that the extent of their harm is irrelevant. The represented[3] Plaintiff Borrowers assert, in the alternative, that Defendant Banks bear the burden of proof to demonstrate the impact of the remaining mortgage debt on Plaintiff Borrowers' damages. Plaintiff Borrowers additionally contend that even if they must prove their net damages and account for their remaining mortgage debt, their claims will survive summary judgment because they are entitled to nominal and punitive damages; as well as recovery of interest, loss of use payments, and past payments.

The represented Plaintiff Borrowers focus their attention instead on two different questions: "(1) what items of damages are recoverable, either in restitution, tort, or under the consumer statute, for the unlawful disposition of real property using a power of sale, and (2) how is each item

---

[3]     Plaintiff Borrowers Lionel Lima, Jr. and Barbara Ann Delizo-Lima (collectively, the Limas) terminated their counsel around November 2019. This court granted the Limas pro se status.
        Liberally construing the Limas' separate answering brief, the Limas do not present any argument responsive to the certified question. This opinion therefore focuses on the represented Plaintiff Borrowers' arguments.

9

measured?"  Using this framework, Plaintiff Borrowers argue that they are entitled to restitution based on Defendant Banks' "unlawfully obtained benefits."  In particular, Plaintiff Borrowers argue that the alleged wrongful foreclosures constituted intentional torts.  They consequently reason that the fact that they defaulted on their loans is irrelevant.  Plaintiff Borrowers instead aver that they are entitled to whatever benefits Defendant Banks received from wrongfully foreclosing on their properties.

Plaintiff Borrowers further assert that their restitution damages should include (1) the value for which Defendant Banks sold or resold the foreclosed properties, (2) interest for the loss of use of the foreclosed properties, and (3) any value Plaintiff Borrowers paid on the mortgages.  Moreover, Plaintiff Borrowers argue that Defendant Banks cannot offset the restitution damages they owe Plaintiff Borrowers by the remaining mortgage debts because this would merely incentivize Defendant Banks to wrongfully foreclose other properties.

### iii. Defendant Banks' Reply Briefs

Defendant Banks reply that this court should decline to address Plaintiff Borrowers' alternative questions.  Defendant Banks counter that, by raising the alternative questions, Plaintiff Borrowers ask this court to grant them an

unjustified and unprecedented windfall.  As an example, Defendant Bank Wells Fargo, N.A. points out that Plaintiff Borrowers Mike and Tham Myers (collectively, the Myers) owed Wells Fargo, N.A. over $100,000 more than their property was worth at the time of the nonjudicial foreclosure sale.  However, using Plaintiff Borrowers' requested restitution formula would grant the Myers over $1,771,000 in damages simply because Wells Fargo did not strictly comply with certain procedural requirements when conducting the nonjudicial foreclosure sales.

Defendant Banks further respond that, in any event, they did not realize any unjustified benefit that would entitle Plaintiff Borrowers to restitution because (1) Defendant Banks were entitled to foreclose on the properties and (2) Defendant Banks suffered a loss when they sold or resold the properties for less than the relevant mortgage's value.

## II.   STANDARD OF REVIEW

### A.   Certified Question

"[T]he supreme court shall have jurisdiction and powers . . . [t]o answer, in its discretion . . . any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]"  HRS § 602-5(a)(2) (2016).

> When a federal district or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is

11

> no clear controlling precedent in the Hawai'i judicial
> decisions, the Hawai'i Supreme Court may answer the
> certified question by written opinion.

Hawai'i Rules of Appellate Procedure (HRAP) Rule 13(a) (2000).

"An issue of law presented by certified question is reviewed by this court de novo under the right/wrong standard of review." Miller v. Hartford Life Ins. Co., 126 Hawai'i 165, 173, 268 P.3d 418, 426 (2011) (citation omitted).

### III. DISCUSSION

#### A. The Certified Question

As a preliminary matter, this court clarifies the issue this opinion shall address. This court may answer a certified question (1) that concerns the law of Hawai'i, (2) that is determinative of the cause, and (3) for which there is no clear controlling Hawai'i precedent. See HRAP Rule 13(a). The parties do not dispute that the certified question concerns the law of Hawai'i or that there is no clear controlling state precedent on the matter. However, Plaintiff Borrowers make a perfunctory claim that the certified question is not determinative of the cause, implying that this court should not answer the certified question. Nevertheless, Plaintiff Borrowers ask this court to resolve two alternative questions.

Thus, this court must first determine whether it may address either the District Court's question or Plaintiff Borrowers' questions. See HRAP Rule 13(a).

12

This court concludes it may answer the certified question because an answer will be determinative of the cause. The court respectfully declines Plaintiff Borrowers' invitation to address additional, non-dispositive issues.

1.  **It is appropriate for the court to resolve the question certified by the District Court.**

Again, the District Court asked this court to determine:

> Is the effect of the mortgage considered only as a matter of setoff that a lender has the burden of proving after the borrower establishes the amount of the borrower's damages, or does a borrower with no preforeclosure rights in property except as encumbered by a mortgage bear the burden of accounting for the effect of the mortgage in establishing the element of harm in the liability case?

The District Court reasoned that this question is "determinative of the cause" because it will likely grant summary judgment in favor of Defendant Banks if Plaintiff Borrowers must account for their mortgage debts. The District Court explained that this is because "Plaintiff Borrowers' only evidence of harm relates to the loss of title, possession, and investments in the properties without regard to any mortgage."

Plaintiff Borrowers disagree. According to Plaintiff Borrowers, their claims will survive Defendant Banks' motions for summary judgment because they are also entitled to nominal damages; punitive damages; and the recovery of interest, loss of use payments, and past payments.

13

We agree with the District Court's assessment. Plaintiff Borrowers must be able to establish a prima facie case for compensatory damages, factoring in their pre-nonjudicial foreclosure positions, to survive Defendant Banks' motions for summary judgment. Thus, the District Court's question is determinative of the cause if Plaintiff Borrowers fail to make such a case.

It is axiomatic that plaintiffs bear the burden of establishing all necessary elements for their claims. Kelly v. 1250 Oceanside Partners, 111 Hawaiʻi 205, 233, 140 P.3d 985, 1013 (2006). Where, as here, a defendant has moved for summary judgment,

> summary judgment [in favor of the movant] is proper when the [non-movant plaintiff]
>
>> Fails to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the [plaintiff's] case necessarily renders all other facts immaterial. The [defendant] is entitled to judgment as a matter of law because the [plaintiff] has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Exotics Hawaii-Kona, Inc. v. E.I. du Pont de Nemours & Co., 116 Hawaiʻi 277, 302, 172 P.3d 1021, 1046 (2007) (quoting Hall v. State, 7 Haw. App. 274, 284, 756 P.2d 1048, 1055 (1988)) (emphasis omitted).

14

Plaintiff Borrowers must establish an element of damages for each of their claims. Here, Plaintiff Borrowers raised two claims in the underlying proceedings: a wrongful foreclosure claim and a UDAP claim. In order to establish a prima facie case that Defendant Banks are liable for wrongful foreclosure, Plaintiff Borrowers must establish "(1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages." Bank of America, N.A. v. Reyes-Toledo, 143 Hawai'i 249, 264 n.12, 428 P.3d 761, 776 n.12 (2018). To establish a prima facie case for a UDAP claim, Plaintiff Borrowers must establish "(1) either that the defendant violated the UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation." Kawakami v. Kahala Hotel Investors, LLC, 142 Hawai'i 507, 519, 421 P.3d 1277, 1289 (2018) (citations omitted). Thus, in order to survive a motion for summary judgment on their claims, Plaintiff Borrowers must adduce evidence that they have suffered damages. See Exotics Hawaii-Kona, 116 Hawai'i at 302, 172 P.3d at 1046.

Plaintiff Borrowers must make a case for compensatory damages. Plaintiff Borrowers acknowledge that their claims

arise in tort.  Hawai'i law recognizes three categories of damages in tort actions: (1) compensatory damages, (2) punitive damages, and (3) nominal damages.  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 327, 47 P.3d 1222, 1240 (2002) (Acoba, J., concurring).  "Compensatory damages seek to 'compensate the injured party for the injury sustained,' in hopes of 'restor[ing] a plaintiff to his or her position prior to the tortious act[.]"  Bynum v Magno, 106 Hawai'i 81, 85, 101 P.3d 1149, 1153 (2004) (quoting Kuhnert v. Allison, 76 Hawai'i 39, 44, 868 P.2d 457, 462 (1994); Zanakis-Pico, 98 Hawai'i at 327, 47 P.3d at 1240 (Acoba, J., concurring)).

In contrast to compensatory damages, nominal damages are "'a small and trivial sum awarded for a technical injury due to a violation of some legal right and as a consequence of which some damages must be awarded to determine the right."  Zanakis-Pico, 98 Hawai'i at 327, 47 P.3d at 1240 (Acoba, J., concurring) (quoting Van Poole v. Nippu Jiji Co., 34 Haw. 354, 360 (1937)).

Lastly, punitive damages are awarded "to punish the defendant, rather than to compensate the plaintiff."  Id. at 330, 47 P.3d at 1243 (Acoba, J., concurring).  However, punitive damages generally must be supported by an award of nominal or compensatory damages.  See id. ("nominal damages may be the basis for punitive damages in . . . tort actions") (emphasis

16

added); Masaki v. General Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) ("Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future.") (emphasis added).

Contrary to Plaintiff Borrowers' assertion, Plaintiff Borrowers cannot rely on nominal damages to withstand a motion for summary judgment. This court has noted that where a tort claim requires a plaintiff to "separately establish damages," the plaintiff cannot simply infer damages based upon the alleged tort -- i.e., nominal damages. Weinberg v. Mauch, 78 Hawaiʻi 40, 50, 890 P.2d 277, 287 (1995). This is because a crucial component of such a claim is that "the plaintiff suffer[ed] damages as a consequence of the defendant's conduct[.]" Id. (quoting Chemawa Country Golf, Inc. v. Wnuk, 402 N.E.2d 1069, 1072-73 (Mass. App. 1980)). As previously noted, Plaintiff Borrowers must establish damages as an element of both their wrongful foreclosure and UDAP claims. See Reyes-Toledo, 143 Hawaiʻi at 264 n.12, 428 P.3d at 776 n.12; Kawakami, 142 Hawaiʻi at 519, 421 P.3d at 1289. Given that these claims require Plaintiff Borrowers to "suffer damages as a consequence of the [Defendant Banks'] conduct," a claim for nominal damages is not

17

sufficient to preserve Plaintiff Borrowers' claims.  See Weinberg, 78 Hawai'i at 50, 890 P.2d at 287.  Plaintiff Borrowers consequently must establish compensatory damages to salvage their claims.  See id.

Nor does Plaintiff Borrowers' request that the District Court impose punitive damages alleviate their burden to prove compensatory damages.  Given that Plaintiff Borrowers may not rely on a claim for nominal damages to survive summary judgment, Plaintiff Borrowers must provide an alternative basis for a punitive damages award.  See Zanakis-Pico, 98 Hawai'i at 330, 47 P.3d at 1243 (Acoba, J., concurring); Masaki, 71 Haw. at 6, 780 P.2d at 570.  In other words, Plaintiff Borrowers must show that they are entitled to compensatory damages –– the only other independent source of damages –– before they may receive punitive damages.[4]

Finally, Plaintiff Borrowers' identified items for recovery –– interest, loss of use payments, and past payments –– are not sufficient to establish their damages.  Again, compensatory damages are intended to restore a plaintiff to the

_____

[4]    This court notes that Plaintiff Borrowers are statutorily precluded from receiving punitive damages for their UDAP claim.  Zanakis-Pico, 98 Hawai'i at 319, 47 P.3d at 1232 ("HRS § 480-13(b) enumerates the specific damages that a consumer may recover under this chapter . . . and makes no provision for punitive damages.").

position they would have been in prior to the alleged tortious

act.  Bynum, 106 Hawai'i at 85, 101 P.3d at 1153.

> The law divides such "damages into two broad categories–
> general and special."  Ellis v. Crockett, 51 Haw. 45, 50,
> 451 P.2d 814, 819 (1969).  General damages "encompass all
> the damages which naturally and necessarily result from a
> legal wrong done[,]" id., and include such items as "pain
> and suffering, inconvenience, and loss of enjoyment which
> cannot be measured definitively in monetary terms."  Dunbar
> v. Thompson, 79 Hawai'i 306, 315, 901 P.2d 1285, 1294 (App.
> 1995) (citation omitted).  Special damages are "the natural
> but not the necessary result of an alleged wrong[,]" Ellis,
> 51 Haw. at 50, 451 P.2d at 819, and are "often considered
> to be synonymous with pecuniary loss and include such items
> as medical and hospital expenses, loss of earnings, and
> diminished capacity."  Dunbar, 79 Hawai'i at 315, 901 P.2d
> at 1294.

Id.  In light of the purpose of compensatory damages, Plaintiff

Borrowers must make a prima facie case that their requested

damages will restore them to their pre-tort position to survive

summary judgment.  See id.; Exotics Hawaii-Kona, 116 Hawai'i at

302, 172 P.3d at 1046.  In this context, the items that

Plaintiff Borrowers identified constitute, at best, pecuniary

losses that form a mere component of their compensatory damages.

See Bynum, 106 Hawai'i at 85, 101 P.3d at 1153.  As discussed in

greater detail below, Plaintiff Borrowers consequently must

still factor in their pre-nonjudicial foreclosure statuses to

demonstrate their compensatory damages.  Infra at 22-24.

An answer requiring Plaintiff Borrowers to account for

their remaining mortgage debts would be "dispositive of the

cause."  Given that Plaintiff Borrowers must establish

compensatory damages that will restore them to their pre-tort

positions to survive summary judgment, Plaintiff Borrowers' failure to account for their pre-tort positions precludes the satisfaction of the damages elements of their claims.  See Bynum, 106 Hawai'i at 85, 101 P.3d at 1153.  Consequently, an answer to the question certified by the District Court would be "dispositive of the cause" when Plaintiff Borrowers have only provided evidence of a portion of their compensatory damages.  Exotics Hawaii-Kona, 116 Hawai'i at 302, 172 P.3d at 1046; see also HRAP Rule 13(a).

This court may therefore address the question certified by the District Court.

2.  **This court declines to address Plaintiff Borrowers' alternative questions.**

In contrast, this court notes that it would be inappropriate to resolve Plaintiff Borrowers' alternative questions.  Plaintiff Borrowers ask this court to address "(1) what items of damages are recoverable, either in restitution, tort, or under the consumer statute, for the unlawful disposition of real property using a power of sale, and (2) how is each item measured[.]"  However, Plaintiff Borrowers do not contend that a resolution to either of their alternative questions would be "determinative of the cause."  See HRAP Rule 13(a).  In fact, Plaintiff Borrowers' second question acknowledges that any resolution this court could provide would

20

require further fact-finding. Specifically, Plaintiff Borrowers would leave for the District Court the actual measurement of any recoverable damages. Accordingly, this court declines to reformulate the certified question to conform to Plaintiff Borrowers' request and to answer Plaintiff Borrowers' alternative questions. Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai'i 149, 168, 73 P.3d 687, 706 (2003).

**B.    Plaintiff Borrowers must account for their mortgage debts when establishing harm.**

Having determined that this court may address the question certified by the District Court, we turn to the question's merits.

For the following reasons, this court concludes that Plaintiff Borrowers may not establish the damages elements of their wrongful foreclosure or UDAP claims without accounting for their remaining mortgage debts.

**1.    Plaintiff Borrowers bear the burden of establishing their damages.**

Plaintiffs bear the burden of establishing all necessary elements for their claims. Kelly, 111 Hawai'i at 233, 140 P.3d at 1013. This remains the case when a plaintiff opposes a motion for summary judgment. Exotics Hawaii-Kona, 116 Hawai'i at 302, 172 P.3d at 1046. In these cases, the common element between Plaintiff Borrowers' wrongful foreclosure and UDAP claims is compensatory damages. Reyes Toledo, 143 Hawai'i

at 264 n.12, 428 P.3d at 776 n.12; Kawakami, 142 Hawaiʻi at 519, 421 P.3d at 1289.  Moreover, "[i]t is well-settled that all tort claims require that damages be proven with reasonable certainty."  Exotics Hawaii-Kona, 116 Hawaiʻi at 292, 172 P.3d at 1036.  Consequently, Plaintiff Borrowers –– not Defendant Banks –– bear the burden of establishing their damages with reasonable certainty.  See id.

2.    **In establishing damages, Plaintiff Borrowers must account for the value of their mortgages.**

The fact that Plaintiff Borrowers must show compensatory damages places the onus on Plaintiff Borrowers to account for their mortgage debts.  As detailed above, Plaintiff Borrowers must establish compensatory damages to satisfy the damages elements of their wrongful foreclosure and UDAP claims.  Supra at 14-18.  The purpose of compensatory damages is "'to recompense a tort victim for the value of the loss sustained[.]'"  Zanakis-Pico, 98 Hawaiʻi at 327, 47 P.3d at 1240 (Acoba, J., concurring) (quoting 1 Minzer, et al., Damages in Tort Actions, § 3.01 (Matthew Bender 1996)).  Therefore, "'the general rule in measuring damages is to give a sum of money to the person wronged which as nearly as possible, will restore him [or her] to the position he [or she] would be in if the wrong had not been committed.'"  Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 389, 944 P.2d 1279, 1332 (1997) (quoting Nobriga v.

22

Raybestos-Manhattan, Inc., 67 Haw. 157, 162, 683 P.2d 389, 393 (1984)) (alterations in Tabieros).  In light of the purpose of compensatory damages, Plaintiff Borrowers must show that the damages they seek "will restore [them] to the position [they] would be in if the wrong had not been committed."  See id.

In these cases, the tortious acts Plaintiff Borrowers challenge are Defendant Banks' nonjudicial foreclosure sales of their properties.  Plaintiff Borrowers concede that, prior to the nonjudicial foreclosure sales, their property interests were encumbered by "standard-form mortgages" that they "could not repay."  Under such circumstances, Plaintiff Borrowers' mortgage debts are a key factor in determining their damages because the debts constitute a portion of their pre-tort positions.  See Tabieros, 85 Hawaiʻi at 389, 944 P.2d at 1332.

Moreover, Plaintiff Borrowers' burden to prove their damages with "reasonable certainty" militates in favor of requiring Plaintiff Borrowers to account for their remaining mortgage debts.  Plaintiff Borrowers do not dispute that the mortgage debts at issue ranged from approximately $169,000 to nearly $1,000,000 at the time of the nonjudicial foreclosure sales.  These are not insignificant sums.  Plaintiff Borrowers' failure to account for such sums makes it impossible for the trier of fact to determine what damages would restore Plaintiff

23

Borrowers to their pre-foreclosure positions.  Contra Tabieros,
85 Hawai'i at 389, 944 P.2d at 1332.

Using the Myers as an example, the Myers owed
$944,759.00 on their mortgage at the time of the applicable
nonjudicial foreclosure sale.  Wells Fargo then sold the Myers'
property for $815,000.00.  Thus, the Myers must at least
subtract $815,000.00 from the total amount of damages they seek
in order to account for their mortgage debt.[5]

Plaintiff Borrowers nevertheless assert that Defendant
Banks should bear the burden of proving "deductions" during the
damages phase.  Specifically, Plaintiff Borrowers contend that
they should be allowed to disregard their remaining mortgage
debts, and that it is instead up to Defendant Banks to prove any
amounts that should be "deducted" from Plaintiff Borrowers'
damages.  Plaintiff Borrowers base this "deductions" response on
a restitution theory that Defendant Banks should not be unjustly
enriched.  Plaintiff Borrowers additionally cite Beneficial
Hawaii, Inc. v. Kida, 96 Hawai'i 289, 30 P.3d 895 (2001), as

---

[5]    This court uses the lesser amount based on the assumption that Wells
Fargo sought a deficiency judgment.  In this scenario, the Myers would have
received a value of $815,000.00 from the foreclosure sale in the form of
forgiven mortgage debt.  However, the Myers would still owe Wells Fargo
$129,759.00 through a deficiency judgment.

In the event that Wells Fargo did not seek a deficiency judgment, the
Myers would have received the full value of their remaining mortgage debt in
the form of forgiven debt.  In such a case, the Myers would be required to
offset their requested costs by their full mortgage debt of $944,759.00.

evidence that Defendant Banks bear the burden for accounting for Plaintiff Borrowers' mortgage debts.

This contention is unavailing.  First, Plaintiff Borrowers concede that their claims arise in tort.  Plaintiff Borrowers' reliance on restitution theory is therefore inapposite when tort damages are generally intended to make plaintiffs whole.  See Zanakis-Pico, 98 Hawaiʻi at 327, 47 P.3d at 1240 (Acoba, J., concurring) (discussing the damages available in tort actions).

Second, Kida arose in a distinguishable procedural posture.  In that case, plaintiff Beneficial Hawaii, Inc. sought to foreclose on property owned by defendant Donald Muneo Kida. 96 Hawaiʻi at 295-96, 30 P.3d at 901-02.  In addressing whether Beneficial Hawaii, Inc. could seek equitable remedies, this court explained that Beneficial Hawaii, Inc. was not entitled to any relief when it failed to satisfy its burden of proving that it could enforce the note and mortgage.  See Kida, 96 Hawaii at 315-16, 30 P.3d at 921-22.  Kida therefore reinforces the longstanding precedent that a plaintiff must provide sufficient evidence to establish all necessary elements of their claims. See Kelly, 111 Hawaiʻi at 233, 140 P.3d at 1013.

3.  **<u>Santiago</u> confirms that Plaintiff Borrowers must account for their mortgage debts when establishing their compensatory damages.**

This court's holding in <u>Santiago v. Tanaka</u>, 137 Hawaiʻi 137, 366 P.3d 612 (2016), does not change this analysis.  The District Court identifies its "conundrum" as "how, if at all, the 'out-of-pocket losses' restitution analysis bears on whether a borrower can prove the harm element in the liability portion of a wrongful foreclosure claim."  In particular, the District Court reasons that "<u>Santiago</u> may suggest that any remaining mortgage debt be disregarded, and the investment value in the property be returned to borrowers without setoff."

<u>Santiago</u> does not support this proposition.  There, Louis Santiago and Yong Santiago (together, the Santiagos) purchased a tavern from Ruth Tanaka (Tanaka) for $1.3 million. <u>Id.</u> at 140, 366 P.3d at 615.  The Santiagos paid $800,000 in cash, and executed a mortgage to Tanaka for the remaining $500,000.  <u>Id.</u>  During a dispute over sewer maintenance fees, the Santiagos temporarily withheld a mortgage payment.  <u>Id.</u> at 144, 366 P.3d at 619.  In response, Tanaka accelerated the mortgage and initiated nonjudicial foreclosure proceedings.  <u>Id.</u> The Santiagos subsequently resumed their mortgage payments and ultimately paid Tanaka some $585,161.60 on the mortgage.  <u>Id.</u> at 144, 146 n.22, 366 P.3d at 619, 621 n.22.  Nevertheless, Tanaka completed the foreclosure sale, resold the tavern to a third

party, and kept the approximately $1.4 million in payments from the Santiagos. Id. at 146, 366 P.3d at 621. Thus, in contrast to Plaintiff Borrowers who owed significant sums they could not repay on their mortgages, the Santiagos had effectively paid off their mortgage debt. See id. at 158, 366 P.3d at 634. In other words, the Santiagos had no remaining mortgage debt to disregard. See id.

In fact, Santiago makes clear that courts must apply a set off in determining Plaintiff Borrowers' injuries and damages. This court applied the out-of-pocket rule to calculate the Santiagos' damages. Id. at 158-59, 366 P.3d at 633-34. In doing so, we explained that, "[u]nder the out-of-pocket rule, 'the damages are the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused . . . , including expenses incurred in mitigating the damages." Id. at 159, 366 P.3d at 634 (quoting B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182 (Minn. 1988); citing 37 Am. Jur. 2d Fraud and Deceit § 434 (2013)).

Notably, when determining out-of-pocket losses, the party seeking damages "is precluded from any recovery if the value of the property that he or she received in exchange equals or exceeds the value of the property parted with by him or her." 37 Am. Jur. 2d Fraud and Deceit § 434. Courts have long

27

recognized that this is because the party does not sustain any injury in such an equivalent or beneficial exchange.  See, e.g., Stratton's Independence v. Dines, 135 F. 449, 460 (8th Cir. 1905).  Thus, Santiago demonstrates that Plaintiff Borrowers' "price paid" must be set off by the "actual value of the property received" when calculating damages.  See 137 Hawaiʻi at 159, 366 P.3d at 634.

Applying these rules to the present circumstances shows that Plaintiff Borrowers must account for their remaining mortgage debts when they establish their damages.  Although Plaintiff Borrowers did not receive any actual property, they nevertheless received significant value in the form of forgiven mortgage debts.[6]  This constitutes the "actual value of the property received" by Plaintiff Borrowers.  Meanwhile, Plaintiff Borrowers' "price paid for the property" consists of whatever mortgage payments they had made before the nonjudicial foreclosures as well as any other special damages they can prove.  Under these circumstances, Santiago establishes that Plaintiff Borrowers' investments and special damages must be

---

[6]    As previously noted, the actual value received depends on whether the relevant Defendant Bank sought a deficiency judgment.  Supra at n.5.  If so, the applicable offset is limited to the amount by which the Plaintiff Borrower's mortgage debt is reduced.  If not, the applicable offset would be equal to the full amount of the Plaintiff Borrower's mortgage debt.

offset by their mortgage debts.  See 137 Hawai'i at 159, 366 P.3d at 634.

### IV.  CONCLUSION

For the foregoing reasons, we answer the District Court's certified question as follows: Under Hawai'i law, a borrower with no pre-foreclosure rights in property except as encumbered by a mortgage bears the burden of accounting for the effect of the mortgage in establishing the element of harm.

| | |
|---|---|
| Edmund K. Saffery, Deirdre Marie-Iha, Lauren K. Chun, and Loren W. Coe*, Mark D. Lonergan* and Erik Kemp*, for Defendant-Appellant Wells Fargo Bank, N.A. | /s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama<br><br>/s/ Sabrina S. McKenna |
| Megan A. Suehiro, Andrew V. Beaman, Leroy E. Colombe, and Bernard J. Garbutt III*, for Defendant-Appellant U.S. Bank National Association, as Trustee and Deutsche Bank National Trust Company, as Trustee | /s/ Michael D. Wilson<br><br>/s/ John M. Tonaki |



James J. Bickerton, Bridget G. Morgan-Bickerton, John F. Perkin, Stanley H. Roehrig, and Van-Alan H. Shima for Plaintiffs-Appellees Calvin Jon Kirby II, Deirdre-Dawn K. Cabison, James C. Clay, Scott A. Coryea, Katheryn Coryea, Richard H. Farnham, Nancy L. Farnham, Timothy Ryan, Donna Ryan, Kaniala Salis, and Brian S. Weatherly, Individually and on behalf of all others similarly situated in Civil No. 12-00509; for Plaintiffs-Appellees Evelyn Jane Gibo, Patrick Stephen

Hemmens, Deanne Davidson Hemmens,
Vincent Labasan and Jennifer Stike
in Civil No. 12-00514; and
for Plaintiffs-Appellees
David Emory Bald, James L. K.
Dahlberg, Michael John Myers, Jr.,
Tham Nguyen Myers, David Levy, and
Thomas T. Au, individually and on
behalf of all others similarly
situated in Civil No. 13-00135

Lionel N. Lima, Jr., and
Barbara Ann Delizo-Lima,
Plaintiffs-Appellees pro se


*admitted *pro hac vice*