**Electronically Filed
Supreme Court
SCAP-22-0000552
29-FEB-2024
08:17 AM
Dkt. 28 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STEPHEN P.H. WONG, Plaintiff-Appellant,

vs.

ASSOCIATION OF APARTMENT OWNERS OF HARBOR SQUARE, by and through
its Board of Directors, Defendant-Appellee,

and

ASSOCIATION OF APARTMENT OWNERS OF HARBOR SQUARE, by and through
its Board of Directors, Third-Party Plaintiff-Appellee,

vs.

PORTER McGUIRE KIAKONA, LLP (fka Porter Tom Quitiquit Chee &
Watts) and EKIMOTO & MORRIS, ALLLC,
Third-Party Defendants-Appellees.

SCAP-22-0000552

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-22-0000552; CASE NO. 1CCV-19-0002324)

FEBRUARY 29, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, JJ.,
CIRCUIT JUDGE SOMERVILLE AND CIRCUIT JUDGE WONG,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY EDDINS, J.

**I.**

This case is about calculating damages when a condominium association wrongfully forecloses on a unit owner.

Stephen Wong bought a condominium in the Harbor Square complex. The Association of Apartment Owners (AOAO) of Harbor Square governs the development. Wong financed his purchase with a mortgage. Eventually the mortgage balance exceeded the condo's value.

Wong fell behind on his association assessments. Because Wong owed fees, the AOAO non-judicially foreclosed under Hawaiʻi Revised Statutes (HRS) Chapter 667. Turns out, the foreclosure surpassed the AOAO's statutory authority.

Wong sued for wrongful foreclosure. The AOAO said he had no case, because he suffered no damages. The Circuit Court of the First Circuit agreed. It granted the AOAO's motion for summary judgment.

This case explains what a plaintiff who suffers a wrongful foreclosure by an AOAO that had no authority to foreclose at all must show to satisfy the damages element of the tort. We hold that damages are the plaintiff's positive equity in the property, if any, (property's market value minus outstanding mortgage debt), plus lost use arising from the wrongful foreclosure, minus assessments owed to the AOAO. This places

2

the plaintiff in their pre-tort position with a remedy tethered to the wrong.

In many cases, the homeowner who suffers a wrongful AOAO foreclosure will be "underwater" – owing more on their mortgage than the home's fair market value.  This does not necessarily mean they forego a remedy where an AOAO lacked authority to foreclose.  If an underwater plaintiff shows that the value of their wrongly taken use exceeds what they owe the AOAO in assessments, they may pursue their claim.

Here, Wong made no such showing.  He failed to establish lost use value.  Thus, we affirm the circuit court's grant of summary judgment to the AOAO.

## II.

We lay out the factual background, the legal context for non-judicial foreclosures by an AOAO, and the parties' appellate arguments.

### A.    Factual Background

The parties dispute several monetary amounts, including how much Wong paid for the condo.  Because the AOAO moved for summary judgment, we view the facts in the light most favorable to Wong.  See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 295, 141 P.3d 459, 468 (2006).  Thus, we adopt Wong's presented numbers for purposes of this appeal.  Our

analysis though would not change even if we used the AOAO's numbers.

Wong purchased a Honolulu condominium in 2005. He says he paid roughly $500,000, financing the purchase in part with a $420,750 mortgage.

In 2006, Wong refinanced, increasing his mortgage debt to $450,000.

By August 2009, Wong stopped paying both his monthly mortgage and his AOAO fees. In 2010, mortgagee Wells Fargo assigned Wong's mortgage to HSBC Bank.

The AOAO initiated a non-judicial foreclosure on Wong's property in July 2011. The AOAO believed that HRS chapter 667 empowered it to conduct non-judicial foreclosures on properties whose owners were delinquent on their assessments. Not so. This court ruled that those non-judicial foreclosures were unlawful unless the AOAO had a power of sale. Malabe v. Ass'n of Apartment Owners of Exec. Ctr., 147 Hawai'i 330, 339, 465 P.3d 777, 786 (2020).

By the time the AOAO initiated foreclosure, Wong owed $29,335 in unpaid association and maintenance fees. His mortgage debt totaled $481,298.

The AOAO conducted the non-judicial foreclosure in October 2011. It held a public auction. At $1, the AOAO was the

4

highest bidder.  It sold the condo to itself.  Wong lost title.
Soon the AOAO rented out the unit.

Though Wong had long ago stopped paying his mortgage,
mortgagee HSBC Bank waited until May 2016 to start foreclosure
proceedings.  The case took a while.  The circuit court entered
final judgment for HSBC in February 2020.  At that time, HSBC
discharged Wong's mortgage debt, now $711,699.  Then in October
2021, HSBC sold the condo for $576,000.

Hawai'i law instructs AOAOs to turn over excess rental
income collected following a final foreclosure judgment.  HRS
§ 514B-146(n) (2018 & Supp. 2019).  The AOAO certified that it
had no excess rents.  It gave HSBC nothing.  And the AOAO kept
all the pre-foreclosure excess rents.

Though Wong had long lost his property, he did not sue the
AOAO until December 2019.

Wong alleged that the AOAO wrongfully foreclosed.  He says
it conducted a non-judicial foreclosure under Part I of HRS
Chapter 667; yet those foreclosures are only available to
mortgage creditors holding a power of sale.  See HRS § 667-5
(Supp. 2011), repealed by 2012 Haw. Sess. Laws Act 182, § 50 at
684.  The AOAO had no power of sale.  It acted unlawfully and
owes him, Wong insists.

In April 2021, the AOAO filed a third-party complaint
against its prior legal counsel.  The AOAO alleged that its

5

counsel orchestrated and directed the wrongful non-judicial foreclosure.  So, the AOAO says, the lawyers are liable for Wong's damages, if any.

The AOAO moved for summary judgment in January 2022.  Wong was underwater when the AOAO non-judicially foreclosed.  Thus, he suffered no compensatory damages, the AOAO argued.  Although Wong's condo was worth $448,000 in 2011, $481,298 of mortgage debt encumbered it.  Citing Lima, the AOAO said a mortgagor receives a substantial benefit from discharged mortgage debt.  Lima v. Deutsche Bank Nat'l Tr. Co., 149 Hawai'i 457, 467, 494 P.3d 1190, 1200 (2021).  Therefore, per the AOAO, the forgiven debt offsets Wong's out-of-pocket loss.

The lawyers joined the AOAO's MSJ.

Wong countered.  He says the AOAO lost nothing when his mortgage debt was discharged.  It shouldn't get a windfall because someone else forgave his debt.

Wong maintains the AOAO owes him the property's value.  He says Lima entitles him to recover his out-of-pocket losses.  A figure Wong calculates as his purchase price (roughly $500,000), offset only by the dollar the AOAO paid at the foreclosure sale.

Wong also argued that the collateral source rule applies. The collateral source rule directs that benefits received post-tort from an independent source do not diminish a wrongdoer's

liability.  Bynum v. Magno, 106 Hawai'i 81, 86, 101 P.3d 1149, 1154 (2004).

The AOAO responded that the collateral source rule's purpose is to prevent a wrongdoer from receiving a windfall.  The AOAO explained that it receives no windfall from offsetting the discharged mortgage debt.  True, its dollar purchased the property, but only as encumbered by HSBC's mortgage.

In contrast, the AOAO says, paying Wong un-offset out-of-pocket losses - $500,000 for a property whose mortgage he could not pay - gives *him* an undeserved windfall.

The AOAO's former lawyers later chimed in.  The collateral source rule does not apply to discharged mortgage debt.  The lawyers cited the Restatement (Second) of Torts § 920A cmt c (1979).

The circuit court granted the AOAO's MSJ in March 2022.  It dismissed the case with prejudice.

The court applied Lima.  It included Wong's discharged mortgage debt in its compensatory damages calculations.  Because the discharged debt, totaling $711,699, exceeded Wong's out-of-pocket loss, Wong had no compensatory damages.  And no suit.

First Circuit Court Judge Jeffrey Crabtree understood that unlike Lima, the foreclosing party here (the AOAO) was not the party that discharged Wong's mortgage debt.  But the court did not find the distinction meaningful.  The mortgage debt is

"completely intertwined" with the foreclosed-upon unit, regardless of who discharged the debt, the court reasoned.

The circuit court considered special damages, like lost rent. But Wong "offered no evidence of [those] damages." Thus, the court ruled that Wong's damages do not include "lost rents or other harms from being unable to rent out or live in" the condo. At oral argument before us, appellate counsel conceded that Wong had waived any damages claim related to lost rent and use, or the AOAO's receipt of the property's rental income.

Wong appealed to the Intermediate Court of Appeals. Then he applied for transfer to this court. The AOAO and the lawyers supported the request. We accepted transfer.

**B.    Legal Background**

For backdrop, we discuss HRS chapter 667, titled Foreclosures, and HRS chapter 514B, titled Condominiums.

In 2011, chapter 667 provided two ways to conduct non-judicial foreclosures, Part I and Part II. See HRS §§ 667-5 to 667-10 (Part I) repealed by 2012 Haw. Sess. Laws Act 182, § 50 at 684; HRS §§ 667-21 to 667-42 (Part II).

Part I permitted mortgagees with a power of sale to conduct non-judicial foreclosures and property auctions. A power of sale mortgage clause permits the mortgagee to sell foreclosed properties to recover on a delinquent loan. Part I provided

property owners few protections because it required a power of sale.

Part II opens non-judicial foreclosures to parties not holding a power of sale. Part II provides property owners greater protections as compared to Part I because it has a lower barrier to entry. These protections include heightened notice and auction requirements. HRS §§ 667-25 to 667-29.

HRS chapter 514B makes chapter 667 non-judicial foreclosures available to AOAOs. HRS § 514B-146(a). Unpaid common expenses "constitute a lien on the unit." Id. That lien "may be foreclosed by action or by nonjudicial or power of sale foreclosure" procedures described in chapter 667. Id. Chapter 514B did not specify whether associations could access Part I, Part II, or both.

Following chapter 514B's enactment, some apartment associations conducted Part I non-judicial foreclosures. The Hawai'i Legislature reacted. In 2012, it repealed HRS § 667-5, and HRS § 667-5.7 to § 667-8. This shut down Part I foreclosures.

In Malabe, we ruled that because the AOAO lacked a power of sale, and therefore the authority to conduct Part I non-judicial foreclosures, the AOAO's foreclosure was improper. Malabe, 147 Hawai'i at 340, 465 P.3d at 787.

Here, Wong alleges that the AOAO wrongfully foreclosed on his property by conducting a Part I non-judicial foreclosure. He says Part I non-judicial foreclosures were only available to those holding a power of sale. And the AOAO lacked a power of sale.

## C.    The Parties' Arguments on Appeal

On appeal, Wong challenges the circuit court's case-ending conclusion that his extinguished mortgage debt offsets his available damages. He argues that the circuit court erred by ruling that he failed to show compensatory damages. Lima, he thinks, is materially different. There the defendants were mortgage-holders. Because the mortgage debt was forgiven as part of the foreclosure, that benefit offset those plaintiffs' recovery. Moreover, the Lima mortgage included a power of sale, and therefore the foreclosure in that case, he says, was merely procedurally defective.

In contrast, Wong maintains, the AOAO did not hold his mortgage and therefore could not foreclose upon his unit under his mortgage's power of sale. His mortgage debt was extinguished nine years later, and not by the wrongful non-judicial foreclosure. Thus, the only change between Wong's pre- and post-tort positions was the loss of his property. Post-tort, he still owed the mortgage debt.

The AOAO counters that <u>Lima</u> applies.  Wong benefitted when HSBC forgave the mortgage loan.  That perk offsets his recovery. The AOAO says this court should assess Wong's current position against his pre-tort position.  And in the present day, Wong received substantial mortgage forgiveness.

III.

A wrongful foreclosure plaintiff must show that they suffered compensatory damages.  Compensatory damages return the plaintiff to their pre-tort position.  We detail how a plaintiff establishes these damages when an AOAO wrongfully forecloses.

We also consider the collateral source rule.  It does not apply to mortgage debt.

## A.   Wong Must Show Compensatory Damages

To establish a wrongful foreclosure, a plaintiff must establish: "(1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages."  <u>Bank of America, N.A. v. Reyes-Toledo</u>, 143 Hawaiʻi 249, 264 n.12, 428 P.3d 761, 776 n.12 (2018).

Wong alleges facts that satisfy the first three elements. The question is whether Wong - and similarly situated underwater mortgagors who suffered a wrongful AOAO foreclosure – can show damages.

Tort actions under Hawai'i law have three categories of damages: compensatory, nominal, and punitive. Lima, 149 Hawai'i at 465, 494 P.3d 1198. Nominal damages cannot prove a wrongful foreclosure action's damages element. Id. And generally, punitive damages "must be supported by an award of nominal or compensatory damages." Id.

Thus, to survive summary judgment, Wong must present evidence that establishes compensatory damages.

Plaintiffs in a wrongful foreclosure case must show that the damages "will restore [them] to the position [they] would be in if the wrong had not been committed." Id. at 467, 494 P.3d at 1200 (cleaned up). Otherwise, a plaintiff cannot satisfy the damages element.

**B.  Compensatory Damages Put the Plaintiff in their Pre-Tort Position**

A plaintiff's pre-tort position controls. But how does a court identify that position when it includes mortgage debt?

The answer begins with Lima. A plaintiff mortgagor "may not establish the damages elements of their wrongful foreclosure or [unfair or deceptive acts or practices (UDAP)] claims without accounting for their remaining mortgage debts." Lima, 149 Hawai'i at 467, 494 P.3d at 1200. To prove compensatory damages, the mortgagor must factor in the mortgage's value. Before the non-judicial foreclosure, mortgages encumbered the Lima

12

plaintiffs' property.  And they could not repay their debts.

"[T]he debts constitute a portion of their pre-tort positions."

Id.

Lima repeats "the basic principle that the purpose and goal of compensatory damages is to restore injured parties to their position prior to the wrongful conduct."  In re Tirso, No. 11-01873 (RJF), 2022 WL 567704, at *2 (Bankr. D. Haw. Feb. 23, 2022), aff'd, 642 B.R. 833 (D. Haw. 2022).  But, Lima "did not discuss every issue about the calculation of compensatory damages because the district court's certified question was narrower than that."  Id.

Lima answered a certified question.  That question structured this court's answer.  The certifying court asked:

> Is the effect of the mortgage considered only as a matter of setoff that a lender has the burden of proving after the borrower establishes the amount of the borrower's damages, or does a borrower with no preforeclosure rights in property except as encumbered by a mortgage bear the burden of accounting for the effect of the mortgage in establishing the element of harm in the liability case?

Lima, 149 Hawai'i at 464, 494 P.3d at 1197.

Lima's question was procedural.  Does the outstanding mortgage come into play as a setoff, or is it an element to the claim?  This court was clear.  "Plaintiff Borrowers may not establish the damages elements of their wrongful foreclosure or UDAP claims without accounting for their remaining mortgage debts."  Id. at 467, 494 P.3d at 1200.

13

Our decision though had limited scope.  Id. at 466, 494 P.3d at 1199 ("it would be inappropriate to resolve" plaintiff's questions on what damages are recoverable and how damages are measured).

We now address the questions Lima left untouched: when an AOAO wrongfully forecloses, what damages are recoverable and how are damages calculated?

Before Lima, this court also addressed wrongful foreclosure damages in Santiago v. Tanaka, 137 Hawai'i 137, 366 P.3d 612 (2016).  The plaintiffs in that case were entitled to "their proven out-of-pocket losses from Tanaka's wrongful foreclosure of the Mortgage."  Id. at 158, 366 P.3d at 633.  Out-of-pocket losses "are the difference between the actual value of the property received and the price paid for the property, along with any special damages . . . including expenses incurred in mitigating the damages."  Id. at 159, 366 P.3d at 634.

Santiago's "out-of-pocket losses" language described how to put the unusually-situated Santiagos in their pre-tort position. See id.  Santiago did not depart from the basic principle that compensatory damages aim to return the plaintiff to their pre-tort position.

The Santiagos bought a tavern from Tanaka.  Id. at 140, 366 P.3d at 615.  The Santiagos financed the purchase with a large down payment and a mortgage from Tanaka.  Id.  Tanaka

misrepresented the cost of the tavern's sewer service.  Id. at 151, 366 P.3d at 626.  The parties tried to mediate the sewer fee issue.  When mediation hit an impasse, Santiago withheld one mortgage payment and deposited it in an escrow account.  Id. at 144, 366 P.3d at 619.  Tanaka sent the Santiagos a notice of default and intent to foreclose.  The Santiagos cured their default and resumed paying their mortgage.  Id.

Still, Tanaka non-judicially foreclosed.  Id. at 145, 366 P.3d at 620.  She bought the tavern at the ensuing foreclosure sale, and resold it to a third party.  Id. at 145, 158, 366 P.3d at 620, 633.  This court held that Tanaka unlawfully foreclosed. Id. at 157, 366 P.3d at 632.  The mortgage lacked a power of sale and the Santiagos had cured their default on the mortgage. Id. at 155, 157, 366 P.3d at 630, 632.

The Santiagos should not have lost the tavern.  But it was too late to get the property back.  Tanaka had resold it to someone else.  Id. at 158, 366 P.3d at 633.

Still, the Santiagos had a remedy.  This court awarded damages that put the Santiagos in the position they would have been in had they not bought the tavern.  Id.  Because the value the Santiagos received in the foreclosure was zero (they had made "virtually full payment" on the mortgage to Tanaka), the measure of their position before they bought the tavern was their "out-of-pocket losses."  Id.  We awarded the Santiagos

15

"the price paid for the property": their downpayment, mortgage payments, closing costs, property taxes, and attorney fees.  Id. at 158–59, 366 P.3d at 633–34.

There are two reasons the Santiagos' proper pre-tort position was their pre-purchase position.  First, no lender could foreclose.  The Santiagos were current on their mortgage. Second, the Santiagos relied on Tanaka's falsehoods when they bought the tavern.  So awarding the Santiagos what they spent in reliance on the misrepresentations was appropriate.  Id. at 159, 366 P.3d at 634.

But not all plaintiffs are like the Santiagos.  For damages purposes, they do not automatically slot into a pre-tort world where they never bought the property.

The United States Bankruptcy Court for the District of Hawai'i delivers a useful example.  Consider a homeowner who defaults on the mortgage, but the mortgagee's foreclosure is procedurally defective.  There, the mortgagee is entitled to foreclose; the wrong is how the sale takes place.  Tirso, 2022 WL 567704, at *3.  Thus, the appropriate measure of damages is "the difference between the price that the property would have brought in a proper foreclosure sale and the price paid at the defective foreclosure sale."  Id. at *4.

This measure of damages is "tethered to the wrong."  In re Simon, No. 11-02788, 2023 WL 1971587, at *5 (Bankr. D. Haw. Feb.

16

11, 2023). It restores the plaintiff "to the position [they] would be in if the wrong had not been committed." Lima, 149 Hawai'i at 467, 494 P.3d at 1200.

Santiago's "out-of-pocket losses" method does not make defendants cough up every dollar a plaintiff spends acquiring and maintaining the property. None of this court's cases applying Santiago's "out-of-pocket losses" language awarded the plaintiffs every item of damages the Santiagos won.

Lima built on Santiago's foundation. Lima noted that Santiago's "out-of-pocket losses" calculation accounted for the Santiago's mortgage debt. 149 Hawai'i 468-69, 494 P.3d at 1201-02. Because there was no mortgage debt, there was nothing to account for. Id.

Lima recognized that although foreclosed mortgagors with outstanding debt don't "receive any actual property, they nevertheless received significant value in the form of forgiven mortgage debts." Id. at 469, 494 P.3d at 1202. Each dollar no longer owed is a dollar gained. Thus, a plaintiff's outstanding mortgage debt must be accounted for. That is, it offsets the property's market value at the time of the wrongful foreclosure. Id.

Wong believes Lima aids his cause. Lima involved a wrongful non-judicial foreclosure by a mortgagee bank. Wong distinguishes his case. It involves a non-judicial foreclosure

17

by a non-mortgagee AOAO for unpaid association fees.  Wong says he received no benefit from the AOAO's foreclosure because his mortgagee did not concurrently discharge his debt.  He was still liable on the mortgage.  Yet he lost title to the property.

Wong calculates his out-of-pocket losses as: the condo's roughly $500,000 purchase price, offset only by the dollar the AOAO paid for it.  But this calculation improperly restores Wong to a Santiago-like pre-condo-purchase position.

Two differences separate Wong's pre-purchase position and his position had the AOAO not wrongfully foreclosed (his proper pre-tort position).

First, without the AOAO's wrongful foreclosure, Wong still owed a mortgage he was seemingly unable to repay.  Therefore, his pre-tort position still includes a looming foreclosure by HSBC.

Second, Wong had no equity in his condo during the non-judicial foreclosure.  If he tried to sell his property in 2011, he would not have pocketed the condo's full market value because of the debt encumbering the property.  We therefore decline to award him the property's un-offset value (minus one dollar).

Further, we believe it's unjust to make the AOAO pay Wong the condo's full value.  Mortgage foreclosures are equitable proceedings governed by equity rules.  Santiago, 137 Hawai'i at 157, 366 P.3d at 632.  When the AOAO bought the unit for a

18

dollar at the foreclosure sale, it didn't buy an unencumbered interest.  It purchased the property subject to the mortgage. The AOAO owned the property for only the time it took HSBC to foreclose.  Unwinding the wrongful foreclosure – redressing the wrong to Wong - should not cost the AOAO the full unencumbered value of the condo.

Wong warns that offsetting debt when there is a non-debt-holder wrongful taking will lead to doomsday.  He says this approach incentivizes predatory behavior and immunizes wrongdoers who take advantage of underwater debtors.  Debt-financed new cars, for example, may attract car thieves.  Wong forecasts that a car thief, if sued, would pay no damages if the car's loan exceeds its value.

Wong's fears are misplaced. (Notwithstanding the rarity of lawsuits against car thieves.)  Our decision and <u>Lima</u> only apply to wrongful foreclosures of real property.  For Wong's dire scenarios, the remedy is conversion.  Conversion applies only to chattels.  <u>See</u> Restatement (Second) of Torts § 222A (1965) ("Conversion is an intentional exercise of dominion or control over a chattel.").  A conversion plaintiff receives the item's full value.  <u>Id.</u>  Our decision and <u>Lima</u> leave conversion law undisturbed.

**C.   How a Plaintiff May Show Damages for Wrongful Foreclosure by an AOAO**

To establish the damages element of a claim for wrongful foreclosure by an AOAO lacking foreclosure authority, plaintiffs must account for their remaining mortgage debts.  The mortgage offsets the property's market value at the time of the wrongful foreclosure.  Lima, 149 Hawaiʻi at 469, 494 P.3d at 1202.  But negative equity does not thwart every path to relief.  The plaintiff's pre-tort position includes use of the property until the mortgagee's foreclosure.  Though behind on loan obligations, the plaintiff still has title.  Plaintiffs may seek compensation for use even if they're underwater on their mortgage.  But this lost use is offset by what the plaintiff owes the AOAO for assessments until the mortgagee forecloses.

A plaintiff's pre-tort position also includes their equitable right to redeem the property before a final foreclosure judgment.  See Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Hawaiʻi 157, 164, 969 P.2d 1275, 1282 (1998) (recognizing equitable redemption).  If a plaintiff can clearly show that they would have redeemed their property absent the AOAO's wrongful foreclosure, they may assert damages from losing their equitable right.  (Wong did not.)

In Lima, the mortgage debt discharge was contemporaneous with the non-judicial foreclosure.  So Lima did not anticipate

20

time elapsing between the wrongful foreclosure and the mortgage discharge. It doesn't account for plaintiff's lost use of the property between the wrongful foreclosure and the mortgagee's valid foreclosure. Part of plaintiff's pre-tort position in a wrongful AOAO foreclosure is the continued use and enjoyment of the property until the mortgagee's ultimate foreclosure.

Once a mortgagee validly forecloses, that foreclosure cuts off the plaintiff's use right. Here, for example, had Wong established lost use damages, he would be owed them through February 2020, when HSBC concluded foreclosure proceedings. Nationstar Mortg., LLC v. Ass'n of Apartment Owners of Elima Lani Condos., 152 Hawai'i 406, 413, 526 P.3d 383, 390 (2023) ("[T]he foreclosure judgment . . . cut off AOAO's right to possession.").

So we add to Lima. Lima's holding still applies. The property value must be offset by the mortgage debt. But Lima did not obstruct other methods of showing compensatory damages.

We lay out how a plaintiff who suffers a wrongful AOAO foreclosure may establish damages. A plaintiff shows damages if the following exceeds $0:

21

> Positive equity in the property when wrongfully
> foreclosed, if any
>
> + Lost rents or use from the time between the wrongful
> foreclosure and a valid foreclosure
>
> - Unpaid association fees and assessments up until the
> valid foreclosure.

A plaintiff's equity is the property's fair market value when wrongfully foreclosed, less outstanding mortgage debt owed then.

For this calculation, a valid foreclosure occurs when a final foreclosure judgment is entered. See Nationstar, 152 Hawai'i at 413, 526 P.3d at 390 (final foreclosure judgment ends AOAO's right to possession). If a plaintiff sues an AOAO before a valid foreclosure occurs, the plaintiff calculates lost use and unpaid assessments when they file their complaint.

Also, for this calculation, the AOAO may only recoup assessments for common expenses and fees resulting from the plaintiff's failure to timely pay. Attorney fees and any other costs for processing the wrongful foreclosure are excluded. Those costs do not count against the plaintiff. Picking up the tab for attorneys who wrongfully foreclose flips equity principles.

To recap: when an AOAO wrongfully forecloses without foreclosure authority, mortgage debt offsets the property's market value, but does not count against the plaintiff's lost

use, net of assessments and fees owed to the AOAO.  The debt doesn't foil every path to relief.

Yet under this framework, Wong still fails to establish compensatory damages.  When the AOAO conducted its non-judicial foreclosure, Wong owed more on his now-discharged mortgage than the property was worth.  He offered no evidence that he lost rents or use from the wrongful foreclosure.

We therefore conclude that Wong did not satisfy his burden to show compensatory damages.  The circuit court properly dismissed his claim.

**D.  The Collateral Source Rule Does Not Apply**

Wong also argues that the collateral source rule saves him.

The collateral source rule states "that benefits or payments received on behalf of a plaintiff, from an independent source, will not diminish recovery from the wrongdoer."  Bynum, 106 Hawai'i at 86, 101 P.3d at 1154.

Wong says the benefit of the discharged debt should go to him, the wronged party, and not to the tortfeasor.  Wong cites Bynum, which in turn quoted the Restatement (Second) of Torts § 920(A): "[B]enefits conferred on the injured party from other sources are not credited against the tortfeasor's liability."  Id.  Thus, Wong argues that when HSBC discharged his mortgage balance, it independently conferred a benefit to him.  The AOAO

23

lost nothing from HSBC's discharge, Wong says.  So, the discharged debt shouldn't count against his recovery.

We hold that the collateral source rule does not apply to mortgage debt.  Sure, <u>Bynum</u> adopted the collateral source rule from the Restatement (Second) of Torts.  106 Hawai'i at 86, 101 P.3d at 1154.  But the Restatement (Second) of Torts is plain: the collateral source rule applies to insurance policies, employment benefits, gratuities, and social legislation.  Restatement (Second) of Torts § 920A, cmt. c.  Not mortgage debt.  Section 920A doesn't mention mortgages.  (<u>Bynum</u> applied comment c to hold that Medicare and Medicaid payments fall under the rule as social legislation benefits.  106 Hawai'i at 89, 101 P.3d 1157.)

The collateral source rule does not apply to forgiven mortgage debt.

**IV.**

Wong has not demonstrated damages.  We affirm the Circuit Court of the First Circuit's orders.

| | |
|---|---|
| Steven K.S. Chung (Anthony F.T. Suetsugu on the briefs) for appellant | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |
| Mary Martin and Carlos D. Perez-Mesa, Jr. for appellee Association of Apartment Owners of Harbor Square | /s/ Paul B.K. Wong |
| | /s/ Rowena A. Somerville |



Duane R. Miyashiro
for appellee Porter McGuire
Kiakona, LLP

James Shin
(Jodie D. Roeca on the briefs)
for appellee Ekimoto & Morris,
ALLLC