**Electronically Filed
Supreme Court
SCAP-22-0000547
20-JUN-2024
10:39 AM
Dkt. 42 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

---

RONNIE R. LLANES; SHARON L. LLANES;
LAUREN C. CODIE, in her capacity as Personal Representative of
the Estate of Michael Codie (Deceased); and LAUREN C. CODIE,
Plaintiffs-Appellants,

vs.

BANK OF AMERICA, N.A.; CHRIS EDWARD K. KAM; KRISTEN M. KAM;
JP MORGAN CHASE BANK, N.A.; AKIKO MIYAZAKI, INDIVIDUALLY
AND AS TRUSTEE OF THE AKIKO MIYAZAKI REVOCABLE LIVING TRUST
DATED SEPTEMBER 7, 2017; MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; and HIGHTECHLENDING, INC.,
Defendants-Appellees.

---

SCAP-22-0000547

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-22-0000547; CASE NO. 3CC19100106K)

JUNE 20, 2024

RECKTENWALD, C.J., McKENNA AND EDDINS, JJ., AND CIRCUIT JUDGE
WONG, ASSIGNED BY REASON OF VACANCY, AND CIRCUIT JUDGE
SOMERVILLE, IN PLACE OF CIRCUIT JUDGE CHANG, RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

Ronnie and Sharon Llanes and Michael and Lauren Codie

(Borrowers) purchased homes with mortgages from Bank of America,

N.A. (Lender).  After the mortgages entered default, the mortgaged properties were foreclosed upon and sold in nonjudicial foreclosure sales.  Borrowers then sued Lender for wrongful foreclosure, alleging that Lender's foreclosures did not comply with Hawaiʻi Revised Statutes (HRS) § 667-5 (2008) (since repealed).  The circuit court granted summary judgment to Lender.  For the reasons set forth below, we hold that outstanding debt may not be counted as damages in wrongful foreclosure cases.  Because the circuit court correctly concluded that Borrowers did not prove the damages element of their wrongful foreclosure claims, it properly granted summary judgment to Lender.  Accordingly, we affirm.

## I.  BACKGROUND

### A.    Factual Background

According to Borrowers, "the parties do not substantially dispute the amounts expended by [Borrowers] on their properties."  In April 2019, Borrowers sued Lender for wrongfully foreclosing upon their properties.  Borrowers also sued the subsequent purchasers of the properties and others for title and possession, but those claims are not before the Court on appeal.

#### 1.    The Llanes property

In February 2008, Ronnie and Sharon Llanes (Llanes) obtained a mortgage loan for $505,800.00 from Countrywide Bank,

FSB (Countrywide), which would merge with Lender in 2009, that included a provision allowing Countrywide to conduct a nonjudicial foreclosure sale in case of default.

That same month, Llanes paid $562,067.00 to purchase a property in Kailua-Kona, Hawaiʻi. They financed the purchase with (1) the $505,800.00 Countrywide loan, secured by the Llanes property, and (2) at least $56,200.00 in personal funds. They also paid $11,799.04 in closing costs. After closing, they spent at least $17,000.00 to improve their property, paid $26,169.51 in mortgage interest, and paid $3,500.00 for property taxes and insurance. Llanes claimed that they invested a total of $620,535.55 in the property.

In December 2008, Llanes defaulted on their loan. Before defaulting, Llanes paid down the principal of the original loan by $4,623.48. The following year, Llanes modified their loan with a new payment schedule that increased their principal balance owed from $501,176.52 to $525,254.63, before defaulting on the modified loan.

In May 2010, Lender's nominee assigned the Llanes mortgage to BAC Home Loans Servicing, LP (BAC), a subsidiary that would merge with Lender in 2011. That same month, BAC notified Llanes of its intent to foreclose under the power of

sale included in their mortgage, which stated that an

acceleration notice following a breach of the agreement

> shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this [agreement] and sale of the [p]roperty.

BAC then nonjudicially foreclosed under HRS

§ 667-5, repealed by H.B. 1875, 26th Leg., Reg. Sess.

(2012).

BAC published notice of the Llanes property auction on

August 16, 2010, but, according to its October 2010 foreclosure

affidavit and related documents, postponed the auction to

September 7, 2010, and then again to September 27, 2010, where

it placed the highest bid of $439,690.66.  In October 2010,

BAC's nominee, Federal National Mortgage Association (Fannie

Mae), took title to the property and sold the same to a third

party the following year.

At the time of the September 2010 foreclosure auction,

Llanes owed a total of $549,613.33.  Llanes had paid $5,513.74

in principal and $26,169.51 in interest.

2.    **The Codie property**

In 2005, Michael Codie and Lauren Codie (Codie)

purchased an unimproved lot in Waikoloa, Hawaiʻi, for

$225,000.00, including a $191,250.00 mortgage loan and a

4

$33,750.00 down payment. In 2006, they obtained a construction loan for $464,000.00, used to satisfy the original mortgage and, along with other funds, build a dwelling on the lot.

In June 2007, Codie refinanced the existing mortgage with a $548,000.00 mortgage loan with Countrywide Home Loans, Inc. That same month, they acquired a $68,500.00 home equity line of credit (HELOC) from Lender. They paid at least $14,000.00 in closing costs associated with the 2007 refinance and used the refinanced mortgage to pay off the construction loan and related debts.

In September 2008, Codie defaulted on the refinanced mortgage. In March 2009, Countrywide Home Loans, Inc. assigned the Codie mortgage to Countrywide Home Loans Servicing, L.P. (CHLS), which nonjudicially foreclosed upon the property. That same month, Countrywide notified Codie that it intended to foreclose under the power of sale contained in their mortgage, which was identical to the one in the Llanes mortgage. CHLS published notice of the initial May 21, 2009, foreclosure auction in a newspaper once in March 2009 and twice the following month. CHLS then postponed the auction seven times until December 15, 2009.

According to CHLS's foreclosure affidavit, at a December 15, 2009 auction, CHLS — which by then changed its name to BAC — bought the property for $615,062.91.  In April 2010, Fannie Mae took title to the Codie property and subsequently sold the same to a third party the following year.

At the time of the December 2009 foreclosure auction, Codie owed $673,497.97: $609,710.71 on the refinanced mortgage and $63,787.26 on the HELOC.  Lender claims it "discharged" the HELOC in September 2012, but Codie disputes this claim, as set forth below.  Codie paid $42,878.94 on the loans in total.

Borrowers alleged, among other things, that BAC did not publish the actual auction dates for the foreclosed properties by newspaper at least fourteen days in advance thereof, as required by HRS § 667-5(a)(1).

B.   Circuit Court Proceedings

In April 2019, Borrowers sued Lender for wrongful foreclosure.  Count I alleged that Borrowers "were unlawfully deprived of the title, possession, and use of their real property" by Lender, who from 2008 to 2011, "offer[ed] properties without warranties of any kind and without any description, and h[eld] auctions on dates that were unpublished in any newspaper" to "reduce[] interest and attendance at the

6

auctions and increase[] the likelihood that [Lender] would be able to acquire the [p]roperty and hold it for resale." Count II alleged that Lender engaged in unfair or deceptive acts or practices (UDAP) under HRS § 480-2(a) (2002).

As relevant here, Borrowers sought restitution and damages, including the foreclosed properties' market values plus interest, lost rent, acquisition and improvement costs, and treble damages under HRS § 480-13 (1987).

In March 2021, after removal to and remand from federal court, Lender moved for partial summary judgment, contending that Borrowers did not prove damages. In July 2021, the circuit court, the Honorable Wendy M. DeWeese presiding, denied the motions because, "[b]ased on the factual disputes raised and the lack of clarity in existing law, the [c]ourt cannot find that there is no genuine issue of material fact and that [Lender] is entitled to judgment as a matter of law." (Emphasis omitted.)

In September 2021, we issued our decision in Lima v. Deutsche Bank Nat'l Tr. Co., answering a question certified by a federal court as follows: "[u]nder Hawai'i law, a borrower with no pre-foreclosure rights in property except as encumbered by a mortgage bears the burden of accounting for the effect of the

7

mortgage in establishing the element of harm."  149 Hawai'i 457, 469, 494 P.3d 1190, 1202 (2021).

In December 2021, Lender renewed its summary judgment motion, arguing that, under Lima, Borrowers' "claims fail as a matter of law" because Borrowers "put forth no evidence of damages that account for their pre-foreclosure mortgage debts." Borrowers opposed the motion, arguing as relevant here that (1) Lima did not affect this Court's earlier decisions providing out-of-pocket damages in certain wrongful foreclosure cases, and (2) Borrowers' "[t]otal [d]amages [e]xceed the [l]awfully [f]orgiven [d]ebt."  Specifically, Borrowers claimed that Llanes' "gross damages" were $650,535.55, including, among other things, the $505,200.00 obtained through the mortgage loan. Borrowers also claimed that Codie's "gross damages" were either $654,878.94, if using what Codie claimed was spent on the property, or $779,878.94, if using what Codie claimed was the market value of the property.

In August 2022, after hearing the summary judgment motion and permitting Borrowers to submit a supplemental memorandum on the same, the circuit court granted summary judgment to Lender, concluding that, under Lima, Borrowers had not "come forward with evidence of compensatory damages in an

amount that exceeds their respective debt" when debt amounts are counted as "debt owed," rather than damages.

The circuit court reasoned that "[t]he proceeds from the Llanes [l]oan constitute debt owed by the Llanes [p]laintiffs to [Lender], not damages to the Llanes [p]laintiffs.  Therefore, the loan proceeds cannot be included as damages to the Llanes [p]laintiffs and cannot be used to account for their debt on the Llanes [l]oan."  The circuit court further reasoned that "[t]here is no basis for including the value of the [Codie property] at the time of the Codie [l]oan as damages to the Codie [p]laintiffs or for using that value to offset their debt" because "[a]llowing such a valuation as damages would put the Codie [p]laintiffs in a much better position than they were pre-foreclosure where the property was a distressed asset in a depressed housing market."

The circuit court concluded that

> [e]xcluding the financed portion of the purchase price for the [Llanes p]roperty — but even including the alleged lost rental income — the Llanes [p]laintiffs claim that they sustained total damages in the amount of $144,668.55.  The Llanes [p]laintiffs' remaining claimed damages of $144,668.55 does not exceed their debt on the Llanes [l]oan at the time of foreclosure, which was $549,613.33.
>
> . . . .
>
> Excluding the purported value of the [Codie p]roperty at the time of the Codie [l]oan — but even including the alleged lost rental income — the Codie [p]laintiffs claim that they sustained total damages in the amount of $104,878.94.  The Codie [p]laintiffs' remaining claimed damages of $104,878.94 does not exceed their debt on the Codie [l]oan at the time of foreclosure, which was $609,710.71.

9

(Footnote omitted.)

In September 2022, the circuit court entered final judgment on all claims and parties, and Borrowers appealed.

We subsequently granted Borrowers' application to transfer the case to this Court.

**C.   The Parties' Arguments on Appeal**

On appeal and as relevant here, Borrowers argue that the circuit court erred by concluding that they bore the burden of proving their damages and did not meet that burden. Specifically, Borrowers argue that the damages calculation undertaken by the circuit court (1) "precludes any plaintiff from recovering damages," (2) "bears no relationship to any reality of the exchange of property for debt," (3) "provides no disincentive or deterrent to wrongful foreclosure at all[,]" and (4) "treats a person who invested and lost $200,000 of their own savings the same as one who invested less than $10,000."

First, Borrowers argue that the circuit court erred by failing to "apply the out-of-pocket loss damages remedy that Hawaiʻi law provides for wrongful nonjudicial foreclosure." (Internal quotation marks omitted.)  Specifically, the circuit court "mistakenly subtract[ed] forgiven debt from the out-of-

pocket losses rather than from the price paid, thereby

pocket losses rather than from the price paid, thereby subtracting or accounting for the debt twice, and thus eliminating the out-of-pocket losses entirely."  (Emphasis and internal quotation marks omitted.)  Subtracting the debt twice, Borrowers argue, effects a "forfeiture" they claim our case law precludes.

Second, Borrowers argue that the circuit court erred by concluding that the Codie HELOC debt "had been discharged and that discharge meant forgiveness" because (1) Lender "never showed or explained what it meant by discharge," (2) "no discharge (or forgiveness or satisfaction) could have occurred by way of the tortious foreclosure sale since liability for a loan secured by a second mortgage loan is [not] forgiven . . . by a foreclosure performed under the first mortgage," and (3) "the record showed that any claimed discharge occurred more than a year after the tort was complete and damages had already been sustained."  (Emphasis and internal quotation marks omitted.)

Finally, Borrowers argue that the circuit court erred "because the evidence presented by [Lender] on both the original 2021 (denied) summary judgment motion and on the Renewed Motion did not meet the movant's burden to establish a right to summary judgment."

11

While Borrowers acknowledge that Lima requires them to "account for" outstanding debt, they maintain that out-of-pocket damages should be calculated by "subtracting [forgiven] debt from the total of all sums invested, both savings and borrowed." (Emphasis omitted.)

For its part, Lender argues that the circuit court correctly determined that Lima requires Borrowers to subtract their debt from their damages. Specifically, Lender argues that Borrowers impermissibly "include[] the unpaid portion of [their] mortgage loans in their damages calculations." Second, Lender argues that the circuit court did not err in holding that Borrowers must show damages to survive summary judgment because the burden at summary judgment lies with the party bearing the burden of proof at trial.

## II. STANDARD OF REVIEW

Summary judgments are reviewed de novo and are only appropriate where no genuine issue of material fact is established by admissible evidence, when the evidence and inferences drawn therefrom are viewed in the light most favoring the party opposing summary judgment. City and Cnty. of Honolulu v. Victoria Ward, Ltd., 153 Hawaiʻi 462, 475-76, 541 P.3d 1225, 1238-39 (2023). We may affirm summary judgments on any grounds in the record, including those upon which the circuit court did

not rely.  Reyes v. Kuboyama, 76 Hawaiʻi 137, 140, 870 P.2d 1281, 1284 (1994).

### III. DISCUSSION

Borrowers ask this Court to hold that defaulting borrowers may receive compensatory damages for wrongful foreclosures of encumbered properties by adopting a novel approach that includes outstanding mortgage debt as part of Borrowers' damages under Lima.  As set forth below, however, we conclude that outstanding mortgage debt may not be counted as damages.  Without including debt as part of their damages, Borrowers cannot prove their damages after accounting for their debts under Lima.  Accordingly, we affirm the circuit court's grant of summary judgment to Lender.

"[S]ummary judgment in favor of the movant is proper when the non-movant plaintiff [f]ails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which the plaintiff will bear the burden of proof at trial" because, "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial."  Lima, 149 Hawaiʻi at 464, 494 P.3d at 1197 (brackets omitted).

"It is axiomatic that plaintiffs bear the burden of establishing all necessary elements for their claims." Lima, 149 Hawaiʻi at 464, 494 P.3d at 1197. A borrower "may assert a claim of wrongful foreclosure by establishing the following elements: (1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages." Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 264 n.12, 428 P.3d 761, 776 n.12 (2018).

For their UDAP claims to survive summary judgment, Borrowers must show "(1) either that the defendant violated the UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation." Lima, 149 Hawaiʻi at 464-65, 494 P.3d at 1197-98. "[I]t is well-settled that all tort claims require that damages be proven with reasonable certainty." Id. at 467, 494 P.3d at 1200. Thus, Borrowers "must adduce evidence that they have suffered damages." Id. at 465, 494 P.3d at 1198.

"Hawaiʻi law recognizes three categories of damages in tort actions: (1) compensatory damages, (2) punitive damages, and (3) nominal damages." Id. at 465, 494 P.3d at 1198.

14

Because (1) a wrongful foreclosure plaintiff "cannot rely on nominal damages to withstand a motion for summary judgment," id., (2) "punitive damages generally must be supported by an award of nominal or compensatory damages," id., and (3) the damages which may be trebled under HRS § 480-13 and for which Borrowers prayed are compensatory, see Leibert v. Fin. Factors, Ltd., 71 Haw. 285, 293, 788 P.2d 833, 838 (1990) (holding that treble compensatory damages is maximum amount allowed under HRS § 480-13); Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaiʻi 309, 319, 47 P.3d 1222, 1232 (2002) (noting same), Borrowers must show compensatory damages, which are intended "to recompense a tort victim for the value of the loss sustained," Lima, 149 Hawaiʻi at 467, 494 P.3d at 1200, to survive summary judgment.

Because our decisions in Santiago v. Tanaka, 137 Hawaiʻi 137, 366 P.3d 612 (2016), and Lima are central to Borrowers' arguments, we recount them below. Other cases relied upon by Borrowers do not change our analysis and are not discussed.

Santiago was a case where a property seller made fraudulent misrepresentations to a buyer and foreclosed upon the subject property without having any right to do so. Louis and Yong Hwan Santiago purchased a tavern from seller Ruth Tanaka, who misrepresented the tavern's sewer service costs during their

15

negotiations. 137 Hawaiʻi at 154, 366 P.3d at 629. The Santiagos purchased the tavern from Tanaka with an $800,000.00 down payment and a $500,000.00 mortgage loan, the terms of which did not include a power of sale. Id. at 140, 156, 366 P.3d at 616, 631. Upon discovery of the sewer fees, the Santiagos disputed the fees and initially withheld mortgage payments before curing the default. See id. at 157, 366 P.3d at 632. Some four months later Tanaka sold the tavern to herself in a nonjudicial foreclosure auction, and then resold it to a third party. Id. at 148, 157-58, 366 P.3d at 623, 632-33.

We held that Tanaka improperly foreclosed upon the Santiagos' tavern because (1) her misrepresentations and non-disclosures induced the Santiagos to purchase the tavern, (2) the mortgage altogether lacked a power of sale, and (3) the Santiagos cured their default. Id. at 152, 156-57, 366 P.3d at 627, 631-32. Because the tavern could not be returned to the Santiagos, having been resold, we concluded that they were entitled to "out-of-pocket losses of $1,412,790.79 as a result of [the seller's] wrongful foreclosure of the [m]ortgage and subsequent sale of the [t]avern." Id. at 158-59, 366 P.3d at 633-34.

Five years later, we decided Lima, which directly addressed the issues at the center of this appeal.

Specifically, we addressed the following question, certified by a federal court:

> Is the effect of the mortgage considered only as a matter of setoff that a lender has the burden of proving after the borrower establishes the amount of the borrower's damages, or does a borrower with no preforeclosure rights in property except as encumbered by a mortgage bear the burden of accounting for the effect of the mortgage in establishing the element of harm in the liability case?

Lima, 149 Hawaiʻi at 460, 494 P.3d at 1193.

Lima arose from three putative class actions, initially filed in the Hawaiʻi courts but later removed to federal court and involving substantially similar facts:

> [e]ach [p]laintiff [b]orrower mortgaged real property to one of the [d]efendant [b]anks. However, [p]laintiff [b]orrowers defaulted on their mortgages. The relevant [d]efendant [b]ank conducted nonjudicial foreclosure sales of the mortgaged properties pursuant to [HRS] § 667-5. However, [d]efendant [b]anks did not strictly comply with the procedural requirements of HRS § 667-5. For instance, [d]efendant [b]anks allegedly postponed some of the foreclosure auctions without publishing a notice. The properties were then either sold to third parties during the foreclosure sales or purchased by the mortgage-holding [d]efendant [b]ank and resold to third parties after the foreclosure sales.

Id. at 460-61, 494 P.3d at 1193-94 (footnote omitted).

After the Lima borrowers sued for wrongful foreclosure, the defendant banks moved for summary judgment,

> contend[ing] that [the borrowers] would not be able to show that they were harmed, or suffered any damages, because [the borrowers] did not show that (1) they could have made their loans current, (2) their properties could have sold at a higher price but for [d]efendant [b]anks' alleged actions, or (3) their properties were worth more than their remaining mortgage debts.

Id. at 462, 494 P.3d at 1195.

17

The Lima borrowers "respond[ed] that it was sufficient for [them] to show that they lost title, possession, and any investments in their properties to establish their damages to survive a motion for summary judgment," and that "they did not need to factor in their remaining mortgage debts because the debts were only relevant as a set off [d]efendant [b]anks must prove." Id. The federal court then certified the question to this Court, which agreed to consider the question. Id.

As relevant here, we held that "[b]orrowers must account for their mortgage debts when establishing harm." Id. at 467, 494 P.3d at 1200. We reasoned that the "[b]orrowers bear the burden of establishing their damages," and, "[i]n establishing damages, [the b]orrowers must account for the value of their mortgages." Id. This, we wrote, was "confirm[ed]" by Santiago because, while factually distinct — the Santiago plaintiffs "had effectively paid off their mortgage debt" and therefore "had no remaining mortgage debt to disregard" — "under the out-of-pocket rule, the damages are the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused, including expenses incurred in mitigating the damages." Id. at 468-69, 494 P.3d at 1201-02 (brackets,

18

ellipsis, and internal quotation marks omitted).  And, "[n]otably, when determining out-of-pocket losses, the party seeking damages is precluded from any recovery if the value of the property that he or she received in exchange equals or exceeds the value of the property parted with by him or her," meaning that "Santiago demonstrates that [the borrowers'] price paid must be set off by the actual value of the property received when calculating damages."  Id. at 469, 494 P.3d at 1202 (internal quotation marks omitted).

We therefore concluded that

> [b]orrowers must account for their remaining mortgage debts when they establish their damages.  Although [the borrowers] did not receive any actual property, they nevertheless received significant value in the form of forgiven mortgage debts.  This constitutes the "actual value of the property received" by [the borrowers]. Meanwhile, [the borrowers'] "price paid for the property" consists of whatever mortgage payments they had made before the nonjudicial foreclosures as well as any other special damages they can prove.  Under these circumstances, Santiago establishes that [the borrowers'] investments and special damages must be offset by their mortgage debts.

Id. (footnote omitted).

Borrowers argue that Hawai'i courts should not consider why a given foreclosure was wrongful when calculating damages. We disagree.  Hawai'i law distinguishes between unlawful foreclosures that were "merely procedurally defective" and those that were undertaken "without foreclosure authority" at all. Wong v. Ass'n of Apartment Owners of Harbor Square, 154 Hawai'i 58, 63, 67, 545 P.3d 547, 552, 556 (2024).

19

Santiago and Lima support the distinction between procedurally defective wrongful foreclosures and those that were altogether unauthorized. We clarified this distinction in Lima. There, we wrote that, "in contrast to [the Lima borrowers] who owed significant sums they could not repay on their mortgages, the Santiagos had effectively paid off their mortgage debt," meaning "the Santiagos had no remaining mortgage debt to disregard." Lima, 149 Hawaiʻi at 468-469, 494 P.3d at 1201-1202. Therefore, "Santiago does not support th[e] proposition" that "any remaining mortgage debt be disregarded, and the investment value in the property be returned to borrowers without setoff." Id. at 468, 494 P.3d at 1201.

We recently had occasion to further clarify this distinction, noting that "not all plaintiffs are like the Santiagos. For damages purposes, they do not automatically slot into a pre-tort world where they never bought the property." Wong, 154 Hawaiʻi at 65, 545 P.3d at 554. "First, no lender could foreclose" upon the Santiagos' property. Id. Second, "[t]he Santiagos were current on their mortgage." Id.

Here, Borrowers were in different pre-foreclosure positions than were the Santiagos for two reasons. First, Lender had the right to foreclose upon their properties under powers of sale. Thus, their "pre-tort position still includes a looming foreclosure." Id. at 66, 545 P.3d at 555. Second,

20

Borrowers were not current on their mortgages.  Thus, to the extent that they were improper at all, the foreclosures at issue here appear from the record to have been "merely procedurally defective."  Indeed, the circuit court noted in its summary judgment order that Borrowers "claim that [Lender] conducted the foreclosures in a wrongful manner by not complying with the technical requirements of the nonjudicial foreclosure statute and power of sale," instead of "claim[ing] that the foreclosures were wrongful because they should not have happened at all."

As we explained in Lima, Santiago does not support the proposition that mortgage debt may be disregarded for the purposes of proving damages.  We wrote in Santiago that, "[u]nder the out-of-pocket rule, the damages are the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused . . . , including expenses incurred in mitigating the damages."  137 Hawai'i at 159, 366 P.3d at 634 (internal quotation marks omitted).  The actual value received here was, as in Lima, the "forgiven mortgage debts," and this is the amount by which "Borrowers' price paid must be set off." 149 Hawai'i at 469, 494 P.3d at 1202 (internal quotation marks omitted).

21

As Borrowers indicated at oral argument, they arrived at their damages figures by "taking everything that was invested in this property, removing the debt, and what was left in there was [Borrowers'] out-of-pocket loss."  Oral Argument at 00:07:04, http://oaoa.hawaii.gov/jud/oa/24/SCOA-021524-SCAP-22-0000547.mp3 [https://perma.cc/59FE-9SQ4].  However, Borrowers conceded in their briefing that under their damages calculations, "[d]ebt is in both the top line and bottom line, but in the top line it is the invested portion of the debt, and in the bottom line it is the forgiven portion of the debt." (Emphases and internal quotation marks omitted.)  The effect of this approach is to factor out — rather than to factor in – debt.

Lima requires factoring in debt, which is the opposite of what Borrowers' proposed damages calculations do.  Because "invested . . . debt" remains debt, it cannot count as damages. As we wrote in Lima, "[u]nder Hawaiʻi law, a borrower with no pre-foreclosure rights in property except as encumbered by a mortgage bears the burden of accounting for the effect of the mortgage in establishing the element of harm."  149 Hawaiʻi at 469, 494 P.3d at 1202.  This means that "[t]o prove compensatory damages, the [borrower] must factor in the mortgage's value." Wong, 154 Hawaiʻi at 64, 545 P.3d at 553.  Borrowers' formula

22

does not account for the mortgages that were encumbering their properties at the time of the foreclosures.  We therefore decline to adopt Borrowers' formula for the purposes of calculating damages under Lima.

Borrowers argue that, to the extent that Lima addressed wrongful foreclosure damages calculations, it did so via dicta.  Specifically, Borrowers assert that Lima "expressly declined to address the broader question of how damages are measured."  Thus, they argue, "comments in Lima that go beyond the certified question, and address the minuend of the subtraction, should be treated as dicta."

We conclude that the circuit court properly relied upon Lima and correctly applied its rationale.  As the circuit court concluded, "[t]he proceeds from the Llanes [l]oan constitute debt owed by the Llanes [p]laintiffs to [Lender], not damages to the Llanes [p]laintiffs.  Therefore, the loan proceeds cannot be included as damages to the Llanes [p]laintiffs and cannot be used to account for their debt on the Llanes [l]oan."  The circuit court also properly determined that "[t]here is no basis for including the value of the [Codie property] at the time of the Codie [l]oan as damages to the Codie [p]laintiffs or for using that value to offset their debt"

23

because "[a]llowing such a valuation as damages would put the Codie [p]laintiffs in a much better position than they were pre-foreclosure where the property was a distressed asset in a depressed housing market."  Finally, the circuit court correctly concluded that Borrowers were "not entitled to damages for lost rental income post-foreclosure because such an award ignores that [Borrowers] were in default on their respective loans and [Lender] had the right to foreclose on the properties such that [Borrowers] could not earn rental income."

"[A]ccounting for the effect of the mortgage in establishing the element of harm," Lima, 149 Hawai'i at 469, 494 P.3d at 1202, means, as noted above, "factor[ing] in the mortgage's value," Wong, 154 Hawai'i at 64, 545 P.3d at 553. This reading comports with "the general rule in measuring damages[, which] is to give a sum of money to the person wronged which as nearly as possible, will restore him or her to the position he or she would be in if the wrong had not been committed." Lima, 149 Hawai'i at 467, 494 P.3d at 1200 (internal quotation marks and brackets in original omitted).  Because we hold that debt may not be counted as damages in wrongful foreclosure actions, the circuit court properly concluded that Borrowers did not prove the damages element of their wrongful foreclosure claims under Lima.

24

Moreover, under Borrowers' own theory, they did not walk away empty-handed — their initial "invested debt" was returned to them on the backend when it was forgiven.  The satisfaction of Borrowers' mortgage debts, which they do not contest here, represents a return of their "investment" on their own theory.  If the "invested debt" was theirs on the front end, it was also theirs on the backend.  Thus, contrary to Borrowers' claims, they did not "forfeit[]" their investments.  Indeed, the claimed out-of-pocket losses, less the outstanding mortgage debts, are exceeded by their "forgiven debt[s]."

We further conclude that Borrowers are not entitled to loss of rent damages.  Llanes and Codie prayed for $30,000.00 and $40,000.00, respectively, in lost rent, which the circuit court denied them because

> such an award ignores that [Borrowers] were in default on their respective loans and [Lender] had the right to foreclose on the properties such that [Borrowers] could not earn rental income.  In other words, [Borrowers'] pre-tort position to which they must be restored was in default on their loans and facing imminent foreclosure.  To award [Borrowers] lost rental income post-foreclosure assumes that the foreclosures should not have happened at all, which is incorrect — there is no dispute that [Borrowers] were in default on their respective loans and that [Lender] had the right to foreclose on the properties.

We agree with the circuit court's analysis.  There is no dispute that Lender's mortgages were valid or that the Borrowers were subject to foreclosure.  This is clearly distinguishable from Santiago, where the Lender had no right to

25

foreclose but did so anyway.  See Wong, 154 Hawai'i at 65, 545 P.3d at 554 ("But not all plaintiffs are like the Santiagos. For damages purposes, they do not automatically slot into a pre-tort world where they never bought the property.").  In a situation like Santiago, it is appropriate to place borrowers back in the position they were in prior to the purchase of the property.  But here, the wrong is different: rather than a foreclosure conducted with no basis whatsoever, the foreclosure here was "procedurally defective."  Id.  In these circumstances, compensatory damages serve to return Borrowers to the position they were in immediately prior to the foreclosure.  See Lima, 149 Hawai'i at 466, 494 P.3d at 1199 (noting that plaintiffs "must make a prima facie case that their requested damages will restore them to their pre-tort position to survive summary judgment").

As we stressed in Lima, the borrowers' mortgage debt must be taken into account in determining their pre-foreclosure position.  Id. ("Plaintiff Borrowers consequently must still factor in their pre-nonjudicial foreclosure statuses to demonstrate their compensatory damages").  In doing so, courts should consider the implications of that debt being delinquent, and the mortgage therefore being subject to "imminent

26

foreclosure." See In re Tirso, No. 11-01873 (RJF), 2022 WL 567704, at *3 (Bankr. D. Haw. 2022), aff'd, 642 B.R. 833 (D. Haw. 2022) (in circumstances similar to those here, federal bankruptcy court concludes that award of damages for loss of use of property "would put the [plaintiff borrowers] in a better position than they occupied just before the foreclosure sale"). We agree with the Bankruptcy Court's reasoning, and accordingly, we affirm the circuit court's ruling on lost rent damages.

Borrowers' other arguments against this reading of Lima are unavailing. For example, Borrowers' contention that Santiago, Lima, and related cases "make clear that calculating damages to avoid forfeiture of the plaintiff's interest involves calculating the difference between two values to arrive at out-of-pocket loss" lacks merit. (Emphasis and internal quotation marks omitted.) "[A] key factor" in determining a plaintiff's pre-tort interest in a wrongful foreclosure case is what debt was encumbering the foreclosed-upon asset. Lima, 149 Hawaiʻi at 467, 494 P.3d at 1200. Without factoring in mortgage debt in calculating a defaulting plaintiff's pre-tort interest in the asset, that interest would be over-valued.

While "there is a remedy" under our law "for every wrong," as Borrowers emphasize, that principle does not support

27

overlooking other relevant principles governing damages awards. Kamau v. Cty. of Haw., 41 Haw. 527, 539 (1957). As we wrote in Lima, the wrongful foreclosure remedy is compensatory damages "proven with reasonable certainty." 149 Hawai'i at 467, 494 P.3d at 1200.

As set forth above, such proof requires consideration of the actual value of the property received by the borrower. Borrowers' suggestion that the circuit court's approach "provides no disincentive or deterrent to wrongful foreclosure at all" does not change this analysis. This case calls for a straightforward application of Lima's holding that debt must factor in to damages calculations. Lima forecloses the possibility that debt may be counted as damages. However, this does not mean that the law provides no remedy or deterrent. Hawai'i's wrongful foreclosure law provides compensatory damages for proven out-of-pocket losses, taking debt into account, and, where a subject property has not been sold to a subsequent purchaser, "the classic remedy for such a cause of action: return of title and possession." Santiago, 137 Hawai'i at 154 n.33, 366 P.3d at 629 n.33.

Lastly, the argument that Codie did not bear the burden of showing that Lender never forgave the Codie HELOC lacks merit. As noted above, Codie bore the burden at summary

28

judgment of proving the damages element of their wrongful foreclosure claim, which included establishing that the purportedly unforgiven Codie HELOC satisfied this element.

For the foregoing reasons, we hold that outstanding debt may not be counted as damages in wrongful foreclosure cases.  Because the circuit court correctly determined that Borrowers did not prove the damages element of their wrongful foreclosure claims, it properly granted summary judgment to Lender.

## IV.  CONCLUSION

The circuit court's grant of summary judgment is affirmed.

| | |
|---|---|
| James J. Bickerton | /s/ Mark E. Recktenwald |
| Van-Alan H. Shima | |
| (Bridget G. Morgan-Bickerton | /s/ Sabrina S. McKenna |
|    on the briefs) | |
| for Plaintiffs-Appellants | /s/ Todd W. Eddins |
| | |
| Elizabeth Z. Timmermans | /s/ Paul B.K. Wong |
| Allison Mizuo Lee | |
| (Patricia J. McHenry | /s/ Rowena A. Somerville |
|    on the briefs) | |
| for Defendant-Appellee | |
| BANK OF AMERICA | |